UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AUTOMOTIVE SERVICE CONSULTANTS, )<br>INC. AND AUTOMATIC DATA<br>PROCESSING, INC., )<br><br>     Plaintiffs, )<br><br>vs. )<br><br>EDWARDS & ASSOCIATES )<br>CONSULTING, INC., LARRY C.<br>EDWARDS, WILLIAM S. RAY, )<br>JOHN W. THOMAS, WILLIAM R.<br>FLOYD, AND SOUTHEASTERN )<br>COMPUTER SYSTEMS, INC.,<br>        )<br>     Defendants. | Civil Action No. CV-96-S-286-S |
| SOUTHERN MICROGRAPHIX, INC., )<br><br>     Plaintiff, )<br><br>vs. )<br><br>AUTOMOTIVE SERVICE CONSULTANTS, )<br>INC., AND AUTOMATIC DATA<br>PROCESSING, INC., )<br><br>     Defendants. ) | Civil Action No. CV-96-S-907-S |

MEMORANDUM OPINION

This action is before the court in the matter of *Southern Micrographix, Inc. v. Automotive Service Consultants, Inc., et al.*, CV96-S-907-S.

Automotive Services Consultants, Inc. and Automatic Data Processing, Inc. (collectively "Automotive") filed a counterclaim against Southern Micrographix, Inc. ("Southern") and a third-party complaint against former Automotive employees John W. Thomas and William R. Floyd. Southern, Thomas, and Floyd move to dismiss

Counts Two through Ten of the counterclaim and third-party complaint.

Upon consideration of the motion, response, pleadings, and arguments of counsel, this court finds that the motion is due to be granted in part and denied in part.

### I. STANDARD FOR 12(b)(6) MOTION TO DISMISS

Under the liberal pleading requirements of the Federal Rules of Civil Procedure, plaintiffs need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief". Rule 8(a), *Fed. R. Civ. P.*. For purposes of a motion to dismiss, the factual allegations in the complaint must be taken as true. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir. 1991), *cert. denied*, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 32 (1991). Dismissal is appropriate only where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991). Accordingly, this court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Executive*, 922 F.2d at 1539. *See also Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946).

2

## II. DISCUSSION

### A. Background

This action centers upon computer software which allows automobile service dealers to anticipate the costs of certain automotive repairs.

John W. Thomas worked for Southern until February of 1992. During that time, he helped to develop software for Automotive which printed a catalog detailing costs for particular automotive repairs.

On February 10, 1992, Thomas began working directly for Automotive, and assisted in the development of software which placed repair costs on a computer screen, rather than on a paper printout. William R. Floyd also was employed by Automotive and assisted in the development of that software. As a condition of their employment, Thomas and Floyd executed employment contracts which transferred all rights to Automotive for any inventions made during their employment. They also agreed to keep confidential Automotive's trade secrets.

Floyd and Thomas resigned from employment with Automotive on October 6, 1995. Automotive alleges Floyd and Thomas misappropriated the computer screen software and disseminated it to Automotive's competitors. Automotive further alleges that Southern re-hired Thomas on March 1, 1996, and that Southern began marketing the computer screen software as its own.

3

B.  **Count Two - Unfair Competition Claim**

Automotive contends the actions of Southern, Thomas, and Floyd "constitute common law unfair competition." (Counterclaim ¶ 65.) Southern, Thomas, and Floyd move to dismiss, because Alabama's "tort of interference with business relations subsumes the torts of unfair competition and disparagement." (Brief in support of motion to dismiss at 3 (quoting *City Ambulance of Alabama, Inc. v. Haynes Ambulance of Alabama, Inc.*, 431 So.2d 537, 539 (Ala. 1983).)

Even so, Automotive claims that the actions of Southern, Thomas, and Floyd constitute "reverse palming off" of Automotive's product as their own. (Counterclaim and amended third-party complaint ¶ 53.) In Alabama, "[u]nfair competition generally consists of 'palming off' on customers, who are buying with ordinary care, the goods or business of one person as and for the goods or business of another." *Jefferson Home Furniture Co. v. Jefferson Furniture Co.*, 349 So. 2d 5, 8 (Ala. 1977); *see also, Disctronics Limited v. Disc Manufacturing, Inc.*, 686 So.2d 1154, 1164 n.4 (Ala. 1996), *overruled on other grounds, Professional Insurance Corporation v. Sutherland*, 700 So.2d 347 (Ala. 1997). The motion to dismiss is due to be denied.

C.  **Count Three - Conversion Claim**

Automotive claims Southern, Thomas, and Floyd converted "Misappropriated Property," which it defines as:

> technical knowledge, business methods, client lists, and pricing information, <u>as tangibly embodied</u> in the Automated Service Pricing Software, the Automotive Demo, the Misappropriated Demo, the Automotive Services

4

Databases, and other property created and owned by Automotive.

(Counterclaim and amended third-party complaint ¶ 45 (emphasis supplied).) Southern, Thomas, and Floyd seek to dismiss Automotive's conversion claim by asserting that the Copyright Act[1] preempts claims for conversion of intellectual property.

> It is hornbook law that a "state law action for conversion will not be preempted if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work." ... However, [the Copyright Act] will preempt a conversion claim "where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work."

*Berge v. Trustees of University of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997); *see also Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984)("Conversion of tangible property involves actions different from those proscribed by the copyright laws, and thus is not preempted"); *Data General Corp. v. Grumman Systems Support Corp.*, 795 F. Supp. 501, 504 (D. Mass. 1992), *aff'd*, 36 F.3d 1147 (1st Cir. 1994)(finding no preemption of conversion claim for possession of plaintiff's software tapes); *Ronald Litoff, Ltd. v. American Express Co.*, 621 F. Supp. 981, 986 (S.D. N.Y. 1985)("Insofar as

---

[1] Section 301(a) of the Copyright Act provides:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

5

plaintiffs allege a tort involving tangible property is not preempted").

Automotive only claims conversion for the tangible embodiments of its alleged "technical knowledge, business methods, client lists and pricing information." (Amended counterclaim and third party complaint ¶ 45; Automotive's supplemental letter brief at 2.) Therefore, the motion to dismiss is due to be denied.

### D. Count Four - Tortious Interference Claim Against Southern, Thomas, and Floyd

Automotive claims that the actions of Southern, Thomas, and Floyd in contacting its customers constitute intentional interference with business or contractual relations. (Counterclaim and amended third-party complaint ¶¶ 56, 77.) Under Alabama law, the elements of that tort are: "(1) existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of the interference." *Utah Foam Products, Inc. v. Polytec, Inc.*, 584 So. 2d 1345, 1352-53 (Ala. 1991).

#### 1. Loss of customers, contracts or business

Southern, Thomas, and Floyd move to dismiss the tortious interference claim, because Automotive allegedly failed to plead that it actually "lost any customers, contracts or business to Southern." (Memorandum in support of motion to dismiss at 5.) An "actual loss of customers" is not a specific element of interference with business relations.

6

> Evidence that [defendant] knew of [plaintiff's] relationship with the customers, evidence that [defendant] personally contacted these companies, and evidence that the contact resulted in damages to [plaintiff] is sufficient for the trial judge to determine that the issue of intentional interference with business relations should be presented to the jury.

*Sevier Insurance Agency, Inc. v. Willis Corroon Corporation of Birmingham*, No. 1941634, 1997 WL 15313 at * 7 (Ala. Jan. 17, 1997). It follows that similar allegations in a complaint are sufficient to survive a motion to dismiss. Automotive's complaint adequately asserts the requirements for a tortious interference claim, and the motion to dismiss is due to be denied.[2]

### 2. "Absence of justification"

Southern, Thomas, and Floyd also move to dismiss the tortious interference claim because "Defendants nowhere plead any facts suggesting, even remotely, 'an absence of justification' for [the] purported interference." (Memorandum brief in support of motion to dismiss at 5.) Southern, Thomas, and Floyd misconstrue Alabama law. "[T]he absence of justification for the interference, really relates to an affirmative defense <u>to be pleaded and proved by the defendant</u>, namely, the defense of justification." *Soap Company v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994).[3] Thus, the burden is on <u>Southern</u>, <u>Thomas</u>, and <u>Floyd</u> to prove "justification," and the motion to dismiss is due to be denied.

---

[2] Automotive only generally alleges it has been damaged by the actions of Southern, Thomas, and Floyd. If Automotive can produce no evidence of damages, summary judgement will be appropriate at a later date. *Sevier Insurance Agency*, 1997 WL 15313 at *7.

[3] Despite the quoted passage, Southern, Thomas, and Floyd somehow rely upon *Soap Co. v. Ecolab, Inc.* as authority for their argument that Automotive must plead "an absence of justification."

7

E.  **Count Five - Tortious Interference Claim Against Southern Micrographix**

Automotive asserts a second tortious interference claim solely against Southern, which allegedly "solicited, facilitated and/or encouraged Thomas and/or Floyd to breach [their] employment contracts." (Counterclaim and amended third-party complaint ¶ 83.)

Southern first moves to dismiss based on its assertion that Automotive fails to plead any of the "key elements" of a claim for tortious interference. (Memorandum in support of motion to dismiss at 6.) In particular, Southern claims that Automotive fails to allege "that Southern knew of the existence of Mr. Thomas' employment contract *before* he made any purported disclosure to Southern." (*Id.* at 8.) The allegations supporting the tortious interference claim are as follows:

> Upon information and belief, commencing from at least April of 1996, Southern has [sic] knowledge and awareness of the Employment Contracts signed by Thomas and Floyd in conjunction with their employment by Automotive and Thomas' and Floyd's duties with respect to the Misappropriated Property. Southern intentionally facilitated and encouraged the breach by Thomas and Floyd of the Employment Contracts in order to take competitive advantage and compete unfairly with Automotive by, without limitation, obtaining the possession of the Misappropriated Demo and claiming ownership of the Misappropriated Demo.

(Counterclaim and amended third-party complaint ¶ 50 (emphasis supplied).) Thomas commenced employment with Southern in March of 1996, one month before Southern allegedly gained knowledge of his employment contract. Consequently, Southern argues that, under Automotive's pleading, it could not possess the requisite knowledge of Thomas' employment contract when he first breached that

8

agreement. This court agrees, and finds that the tortious interference claim is due to be dismissed to the extent it alleges Southern interfered with the employment contract between Thomas and Automotive.

Automotive never alleges that Southern employed Floyd. In fact, Automotive makes no factual allegation connecting Floyd in any way to Southern. Instead, it makes the conclusory statement that Southern "solicited, facilitated and/or encouraged" Floyd to breach his employment contract. (Complaint ¶ 83.) This court finds that Automotive fails to state a claim against Southern for which relief can be granted for interference with Floyd's employment contracts, and the motion to dismiss is due to be granted with respect to Count Five.

**F.   Count Six - Breach of Contract Claim Against Floyd**

Automotive asserts breach of contract claims against Thomas and Floyd for violations of: (1) a "work for hire agreement" executed by Thomas; (2) an employment agreement executed by Floyd; (3) a "work for hire agreement" executed by Floyd; and (4) a non-disclosure agreement executed by Floyd. Floyd moves to dismiss the claims against him, because the employment agreement contains a noncompetition clause which allegedly is void under Alabama Code § 8-1-1.[4] Even if the noncompetition clause is void:

---

[4] **§ 8-1-1. Contracts restraining business void; exceptions.**

(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than as provided by this section is to that extent void.

(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting

9

> [Alabama Code § 8-1-1] itself provides that a contract containing a covenant not to compete "is to that extent void." The contract remains otherwise valid. Therefore, the entire agreement in this case is not made void by the fact that it included the disputed clause.

*Salisbury v. Semple*, 565 So.2d 234, 236 (Ala.1990); *see also Sevier Insurance Agency, Inc. v. Willis Corroon Corporation of Birmingham*, 1997 WL 15313 at *4 (contract could be reformed to impose reasonable territorial limitations).

Thus, even if the noncompetition clause were void, the remainder of the employment agreement would remain valid, and Automotive still could claim breach of contract for failure to "keep confidential Automotive's trade secrets, including but not limited to, technical knowledge and client lists." (Counterclaim and amended third-party complaint ¶ 29.) Accordingly, the motion to dismiss is due to be denied.

### G. Count Seven - Conspiracy Claim

Automotive claims that Southern, Thomas, and Floyd engaged in a civil conspiracy to: (1) "misappropriate the trade secrets of Automotive"; (2) "convert the rights of Automotive and Automatic Data in Misappropriated Property owned by Automotive and Automatic Data"; (3) "tortiously interfere with Automotive's and Automatic Data contractual and business relationships"; and (4) "compete unfairly with Automotive and Automatic Data." (Counterclaim and

---

old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.

(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted.

10

amended third-party complaint ¶¶ 92-95.) Southern, Thomas, and Floyd first seek to dismiss the conspiracy claim by assuming that this court will dismiss the claims upon which the alleged conspiracy was based. That argument is unavailing, because this court has dismissed none of the relevant claims.[5] Southern, Thomas, and Floyd also argue that:

> defendants' conspiracy claim must be dismissed because, as with their other claims, they are fundamental [sic] at odds with defendants' own pleadings. For example, defendants allege that Southern conspired with Messrs. Thomas and Floyd to misappropriate trade secrets. Yet, defendants' own pleadings allege that Messrs. Thomas and Floyd had already stolen the purported trade secrets before they ever came into contact with Southern. ... The same holds true for defendant's conversion conspiracy.

(Memorandum brief in support of motion to dismiss at 10.) They produce no authority in support of that argument. Automotive *actually* alleges that Thomas initially worked for Southern; went to work for Automotive; contacted Floyd; misappropriated property with Floyd; and returned to work for Southern. (Counterclaim and amended third-party complaint ¶¶ 17, 40-42, 46-48.) Thus, Automotive contends Thomas' actions were done in furtherance of an agreement with Southern and Floyd to accomplish several unlawful ends. (Counterclaim and amended third- party complaint ¶¶ 92-95.)

---

[5] This court has dismissed the tortious interference claim asserted against Southern for interference with Thomas' and Floyd's employment contracts. Even so, this court will not dismiss the claim for conspiracy to tortiously interfere with Automotive's contractual and business relations: Thomas could not enter into a conspiracy to tortiously interfere with his own employment contract. *See* Lolley v. Howell, 504 So.2d 253 (Ala. 1987)(a party to a contract cannot be liable for tortious interference with the contract). Automotive's claim clearly is directed towards an alleged conspiracy between Southern, Thomas, and Floyd to interfere with the relations between Automotive and its customers.

11

Those allegations are sufficient to support a claim for conspiracy,[6] and the motion to dismiss is due to be denied.

### H.  Counts Eight and Ten - Indemnification and Contribution Claims Against Thomas

In Count Eight of its third-party complaint, Automotive seeks indemnification from Thomas, and in Count Ten it seeks contribution from him. (Counterclaim and amended third-party complaint ¶¶ 98-104, 111-12.) In response to the motion to dismiss, Automotive states that "[t]he ultimate relief sought in Count Ten is also sought in Count Eight, which seeks indemnification." (Response to motion to dismiss at 8 n.2.) Thus, Automotive seeks to retain both claims by arguing that "[i]ndemnification by an employee to a employer for negligent or fraudulent acts is recognized under Alabama law." (Response to motion to dismiss at 21-22.)

That is a correct statement of Alabama law,[7] but Automotive's claim for indemnification makes no mention of Thomas' status as an former employee. Rather, Automotive claims that "[b]ecause Thomas is primarily responsible for these acts while Automotive and Automatic Data are at most secondarily responsible, Automotive and Automatic Data are entitled to indemnification from Thomas. ..." (Counterclaim and amended third-party complaint ¶ 101.) Automotive

---

[6]"A civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. ... The conspiracy does not supply the cause of action. It is the end of the conspiracy, the wrong sought, that is the gist of the action." Ryan v. First Alabama Bank, 620 So.2d 568, 573 (1993).

[7]"[T]he master who is held to pay damages for an injury inflicted on a third party by the wrong or negligence of his servant has a right of action to recover the amount of such damages from the servant." Huey v. Dykes, 82 So. 481 (Ala. 1919); see also Capital Assurance Company, Inc. v. Johnson, 578 So. 2d 1263, 1264-65 (Ala. 1992); Alabama Kraft Company v. Southeast Alabama Gas District, 569 So. 2d 697, 700 (Ala. 1990).

12

presents no authority for the proposition that "primary responsibility" can be used as the basis for requiring indemnity.

Thus, Thomas moves to dismiss the claim for indemnification, because:

> An indemnification claim is typically based on a 'contract, expressed or implied' or equitable concepts arising from the tort theory of indemnity. ... Here, defendants do not plead that they are entitled to indemnification from Mr. Thomas based on any provision in any contract.

(Memorandum brief in support of motion to dismiss at 11.) This court agrees that Automotive has not stated a claim for indemnification under Count Ten.

Even so, Automotive *does* rely upon Thomas' status as a former employee in its contribution claim:

> Because any alleged misrepresentations and other wrongful acts or omissions made by Thomas while he was employed by Automotive and Automatic Data were made while Thomas was employed by Automotive and Automatic Data, Automotive and Automatic Data are entitled to contribution from Thomas in the event that they are held liable to Southern.

(*Id.* ¶ 112.)

Accordingly, the motion to dismiss Automotive's claim for contribution is due to be denied, because:

> The rule that there is no contribution between tort-feasors does not apply in instances in which one tort-feasor is liable only by reason of the negligence or fault of the other. In such instance, as between the parties, the one acting in the representative capacity and himself guilty of negligence must first respond in damages.

*American Southern Insurance Co. v. Dime Taxi Service, Inc.*, 151 So. 2d 783, 785 (Ala. 1963); *see also In re Covington Grain Company, Inc.*, 638 F.2d 1357, 1362 (5th Cir. 1981)("This means that [an

13

employer] would have an action over against its negligent servants ...").[8]

I. **Count Nine - Fraudulent Misrepresentation Claim Against Thomas**

Automotive claims it was defrauded by Thomas who "made certain representations to Automotive and Automatic Data that he newly created the Automated Service Pricing Software." (Counterclaim and amended third-party complaint ¶ 106.) Thomas moves to dismiss that fraud claim, alleging it is not pled with specificity as required by *Fed. R. Civ. P.* 9(b).

> Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity. The plaintiff's complaint must allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who engaged in them.

*Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). Automotive's pleadings satisfy those requirements:

> Subsequent to December of 1992 .... Thomas represented to Automotive management that the Automotive Service Pricing Software was to be written from scratch and in a different computer language from that of Southern's software ...."

(Counterclaim and amended third-party complaint ¶ 20.) Thus, the motion to dismiss is due to be denied.

### III. CONCLUSION

For the foregoing reasons, the court concludes the motion to dismiss of Southern, Thomas, and Floyd is due to be granted against Counts Five and Eight of Automotive's complaint. Otherwise, the

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

14

motion is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this *2nd* day of January, 1998.

_____
United States District Judge

15